No. 25-60458

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

REGINALD DESMOND WALLACE,
*Petitioner – Appellant*,

v.

STATE OF MISSISSIPPI; BURL CAIN, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,
*Respondents – Appellees*.

On Appeal from the
United States District Court for the Southern District of Mississippi
Civil Action No. 3:19-cv-465-TSL-BWR

# PETITIONER-APPELLANT'S BRIEF

Jennifer S. Freel
Texas Bar No. 24051327
Cody Lee Vaughn
Texas Bar No. 24115897
JACKSON WALKER LLP
100 Congress Ave., Suite 1100
Austin, Texas 78701
[Tel.] (512) 236-2000
[Fax] (512) 236-2002
jfreel@jw.com
cvaughn@jw.com

COUNSEL FOR PETITIONER-APPELLANT

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioner-Appellant**
Reginald Desmond Wallace

Represented by:
Jennifer S. Freel
Texas Bar No. 24051327
jfreel@jw.com
Cody Lee Vaughn
Texas Bar No. 24115897
cvaughn@jw.com
Jackson Walker LLP
100 Congress Ave., Suite 1100
Austin, Texas 78701
[Tel.] (512) 236-2330

Emily M. Carlton
Texas Bar No. 24110812
ecarlton@jw.com
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
[Tel.] (214) 953-5675

Robert B. McDuff (co-counsel in District Court)
MS Bar No. 2532
767 North Congress Street
Jackson, Mississippi 39202
[Tel.] (601) 259-8484
rbm@mcdufflaw.com

**<u>Respondents-Appellees</u>**
State of Mississippi and Burl Cain, Commissioner of the Mississippi Department of Corrections

<u>Represented by:</u>
Erin E. Rutherford
MS Bar No. 104256
Special Assistant Attorney General
Jim Hood
Jerrolyn Owens
P.O. Box 220
Jackson, MS 39205
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205
(601) 359-3811
Email: erin.rutherford@ago.ms.gov

Bridgette N. Grant-State Gov
Mississippi Attorney General's Office
550 High Street
Jackson, MS 39201
(601) 359-3680
Email: bridgette.grant@ago.ms.gov

*<u>/s/ Jennifer S. Freel</u>*
Jennifer S. Freel
Counsel of Record for
Petitioner-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Reginald Wallace respectfully requests oral argument. Oral argument will assist the Court in (1) sifting through multiple layers of standards of review and evidence and (2) parsing a state court opinion and a record.

# TABLE OF CONTENTS


Certificate of Interested Persons ............ ii

Statement Regarding Oral Argument ............ iv

Statement of Jurisdiction ............ xi

Statement of the Issues ............ xii

Introduction ............ 1

Statement of the Case ............ 4

Summary of the Argument ............ 11

Argument ............ 13

I. Habeas Standards of Review ............ 13

II. This Court should amend the certificate of ability to include a question explicitly about "denial of a constitutional right." ............ 16

III. The Mississippi State Court made an unreasonable determination that Wallace would not have taken the plea deal offered to him in the face of his unequivocal statement that he would have taken the deal, which is only rebutted by speculation. (COA 1 and 2). ............ 18

A. Wallace showed a reasonable probability he would have taken the plea deal even without disturbing the Mississippi Court's factual findings. ............ 19

B. The Mississippi Courts individual factual findings based on speculation are rebutted by clear and convincing evidence in the state court record. ............ 21

1. The opinion below got the law wrong. ............ 24

2. The opinion below misreads the factual record before it.......... 29

C. Procedure can weigh into the § 2254(d)(2) analysis, and the Mississippi Court ambushing Wallace with a new, made-up fact on appeal support Wallace's position. .......... 31

IV. The Mississippi Court's § 2254(d)(2) unreasonable determination was not harmless under *Brecht*—the Mississippi Court's two unaddressed elements of *Frye* are met. (COA Issue 3) .......... 34

Conclusion .......... 38

Certificate of Service .......... 40

Certificate of Compliance .......... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anaya v. Davis*,
No. 2:15-CV-234-D, 2018 WL 4145059 (N.D. Tex. Aug. 30, 2018) .......... 37, 38

*Anaya v. Davis*,
No. 2:15-CV-234-D, 2018 WL 4178259 (N.D. Tex. Aug. 3, 2018) .......... 37

*Anaya v. Lumpkin*,
976 F.3d 545 (5th Cir. 2020) .......... 2, 37, 38

*Austin v. Plumley*,
565 F. App'x. 175 (4th Cir. 2014) .......... 26

*Batchelor v. Cain*,
682 F.3d 400 (5th Cir. 2012) .......... 27, 28, 30

*Blue v. Thaler*,
665 F.3d 647 (5th Cir. 2011) .......... 15

*Brecht v. Abrahamson*,
507 U.S. 619 (1993) .......... 4, 12, 34, 38

*Burt v. Titlow*,
571 U.S. 12 (2011) .......... 15

*Dale v. Quarterman*,
553 F.3d 876 (5th Cir. 2008) .......... 36

*Flores-Rivera v. United States*,
16 F.4th 963 (1st Cir. 2021) .......... 13, 36, 38

*Gish v. Hepp*,
955 F.3d 597 (7th Cir. 2020) .......... 16, 35

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) .......... 17

*Jones v. Basinger*,
635 F.3d 1030 (7th Cir. 2011) .......... 16

*Jones v. State*,
284 So. 3d 855 (Miss. Ct. App. 2019) .......... 4, 33

*Jones v. Stephens*,
541 F. App'x 399 (5th Cir. 2013) .......... xi, 17

*Joubert v. Guerrero*,
No. 24-70007, 2025 WL 2643182 (5th Cir. Sept. 15, 2025) .......... 15, 35

*Lafler v. Cooper*,
566 U.S. 156 (2012) .......... *passim*

*Mayo v. Henderson*,
13 F.3d 528 (2d Cir. 1994) .......... 13, 37, 38

*Merzbacher v. Shearin*,
706 F. 3d 356 (4th Cir. 2013) .......... 20, 21

*Miller v. Dormire*,
310 F.3d 600 (8th Cir. 2002) .......... 26

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) .......... 16, 30

*Miller-El v. Dretke*,
545 U.S. 231 (2005) .......... 30

*Missouri v. Frye*,
566 U.S. 134 (2012) .......... *passim*

*Neal v. Puckett*,
286 F.3d 230 (2002) (en banc) .......... 15, 35

*Rolan v. Vaughn*,
445 F.3d 671 (3d Cir. 2006) .......... 26

*Salts v. Epps*,
676 F.3d 468 (5th Cir. 2012) .......... 3

*Simmons v. Epps*,
654 F.3d 526 (5th Cir. 2011) (per curiam) .......... 3, 25, 27, 28, 30

*Smith v. Aldridge*,
904 F.3d 874 (10th Cir. 2018) .......... 26, 31

*Smith v. Campbell*,
620 F. App'x. 734 (11th Cir. 2015) .......... 26

*Strickland v. Washington*,
466 U.S. 668 (1984) .......... *passim*

*United State v. Gil-Cruz*,
808 F.3d 274 (5th Cir. 2015) .......... 36

*United States v. Cisneros*,
No. 22-40102, 2023 WL 8433978 (5th Cir. Dec. 5, 2023) .......... 20

*United States v. Lima-Rivero*,
971 F.3d 518 (5th Cir. 2020) .......... 29

*United States v. Miller*,
179 F.3d 961 (5th Cir. 1999) .......... 29

*United States v. Scribner*,
832 F.3d 252 (5th Cir. 2016) (per curiam) .......... 13, 36, 38

*Wallace v. State*,
184 So. 3d 993 (Miss. Ct. App. 2016) .......... 7, 32

*Wallace v. State*,
264 So. 3d 1 (Miss. Ct. App. 2018) .......... *passim*

*Wallace v. State of Mississippi*,
43 F.4th 482 (5th Cir. 2022) .......... 10

*Wiggins v. Smith*,
539 U.S. 510 (2003) .......... 3, 12, 24, 25, 30, 34

*Wilson v. Sellers*,
584 U.S. 122 (2018) .......... 3, 13, 14, 15, 35

*Wooten v. Lumpkin*,
113 F.4th 560 (5th Cir. 2024) .......... 15, 34, 35

**Statutes**

28 U.S.C. § 1291 .......... vii

28 U.S.C. § 2241 .......... xi, 14

28 U.S.C. § 2243 .......... 14

28 U.S.C. § 2244 .......... 14

28 U.S.C. § 2253 .......... xi, 11, 16, 17, 18

28 U.S.C. § 2254 .......... *passim*

Antiterrorism and Effective Death Penalty Act.
110 Stat. 1214 .......... 14

Miss. Code § 47-7-3(1)(h)(i)(2) (Rev. 2024) .......... 1

Miss. Code § 97-3-73 (Rev. 2014) .......... 5

**Other Authorities**

2 Federal Habeas Corpus Practice and
Procedure § 30.2 (2025) .......... 29

Bryan Garner, *The Elements of Legal Style* (2d. ed. 2002) .......... 22

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 2241 to grant a writ of habeas corpus. This Court has jurisdiction to review the district court's final judgment denying such a petition in this § 2254 habeas case under 28 U.S.C. §§ 1291 and 2253, as the trial court granted a certificate of appealability on three issues. ROA.380; ROA.382. For reasons explained more fully below, Reginald Wallace moves to expand the COA. Any single member of this Court has discretion to further expand the issues on appeal upon a habeas petitioner making "a substantial showing of the denial of a constitutional right." *See* § 2253(c).

The fact the district court issued a COA secures this Court's appellate jurisdiction. This Court has "recognize[d] the Supreme Court has held that the only jurisdictional component of AEDPA's COA requirements is the one requiring the issuance of a COA before an appeal may be taken to the court of appeals[.]" *Jones v. Stephens*, 541 F. App'x 399, 410 (5th Cir. 2013).

## STATEMENT OF THE ISSUES

This case is about whether Reginald Wallace showed *Strickland* prejudice, as expressed in *Frye* and *Lafler*, by showing a reasonable probability that he (1) would have accepted a plea deal; (2) the prosecutor would have not withdrawn the deal before acceptance; and (3) and the judge would have accepted it. The one-day-only plea offer was for a maximum fifteen years while Wallace was facing life, and the judge approved other co-defendants' plea deals for fewer years.

The district court granted sua sponte a certificate of appealability on the following questions:

1. Whether the Mississippi Court of Appeals' factual finding that the subject offer of a plea to simple robbery, like the plea offered to Rush and Gates, was conditioned on petitioner providing testimony against Antonio Wallace was an unreasonable factual determination "in light of the evidence presented in the State court proceeding;"

2. Whether the Mississippi Court of Appeals' factual finding that petitioner would not have accepted a plea offer conditioned on his testifying against his brother was also an unreasonable factual determination "in light of the evidence presented in the State court proceeding;"

3. Whether petitioner was required to present affirmative proof that the prosecution would not have withdrawn the plea offer or that

Judge Chapman would have accepted a plea bargain for petitioner to plead to simple robbery.

Each of these three questions are subparts of the larger *Strickland* prejudice issue:

4. Whether the Mississippi Court of Appeals's decision that Wallace failed to establish *Strickland* prejudice was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

## INTRODUCTION

Reginald Wallace is serving thirty years for a crime on which the prosecution offered a plea with a maximum of fifteen years. Wallace testified under oath that he "would [ ] have taken it . . . A. Yes, ma'am." ROA.962. Wallace is still in prison today because his lawyer—as the Mississippi Court found—did not convey that plea offer.[1] The Mississippi Court found that failure to convey the plea offer was deficient performance and ineffective assistance of counsel, 264 So.3d 1—satisfying the first element of *Strickland v. Washington*, 466 U.S. 668, 688 (1984).[2]

That leaves *Strickland* prejudice. *Id.* at 694. When counsel fails to convey a plea offer, to show prejudice, a petitioner must show a reasonably probability that: (1) he would have taken the plea; (2) "neither the

[1] Had Wallace pled to simple robbery, he would likely be a free man. Wallace would have been eligible for parole on a 15-year simple robbery sentence after serving 50% of his sentence or 7.5 years. *See* Miss. Code § 47-7-3(1)(h)(i)(2). Wallace has now served more than 13 years of his sentence after having been detained on September 24, 2012.

[2] Under the well-known *Strickland* standard, a defendant who claims ineffective assistance of counsel must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

prosecution nor [3] the trial court would have prevented the offer from being accepted or implemented." *Missouri v. Frye*, 566 U.S. 134, 148 (2012); *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012). Just as in *Anaya v. Lumpkin*, the fourth requirement, that the "end result" would have been better, no one disputes here. *Anaya v. Lumpkin*, 976 F.3d 545, 557, 557 n.75 (5th Cir. 2020). It "is easily satisfied," as the plea was for fifteen years or less, and Wallace received a thirty-year sentence. *Id.*

The Mississippi Court found no prejudice by making "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). It held that there was not a reasonable probability that Wallace would have taken the fifteen-years-or-less deal, even though he was facing the possibility of life in prison, had urged his lawyer to obtain such a deal, and his unequivocal testimony that he would have taken the deal. 264 So.3d at 5. ROA.964.

To get around these facts, the Mississippi Court impermissibly inserted into the plea offer a condition that Wallace would have to "testify[] against his brother." 264 So.3d at 5. As the three-judge dissent in the state court proceeding pointed out, that was "speculative at best." *Id.* at 8 (Barnes, J., concurring in part and dissenting in part). That speculation was a factual error by clear and convincing evidence.

There is *nothing* in the record showing that the plea offer included a requirement that Wallace testify against his brother. *See, e.g.*, *id.* Wallace's trial counsel testified to only one condition: "that it had to be done that day," ROA.978, and a separate written plea offer, which Wallace rejected, had no cooperation condition, ROA.442. The Mississippi Court's "speculative at best" conclusion, 264 So.3d at 8, does not survive either § 2254(d)(2) or § 2254(e)(1) deference. When a state court claims something is in the record, and it is not there, then both §§ 2254(d)(2) and (e)(1) are met. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); *see also Salts v. Epps*, 676 F.3d 468, 476 (5th Cir. 2012) (§ 2254(d)(2)); *Simmons v. Epps*, 654 F.3d 526, 537 (5th Cir. 2011) (per curiam) (§ 2254(e)(1)). This is especially true when a petitioner points to contradictory evidence in the record.

The Mississippi Court provided no other reasons for why Wallace could not show prejudice, leaving for de novo review of whether (2) the prosecutor would not have withdrawn the one-day-only offer and (3) the judge who accepted other co-conspirators' deals would have accepted the offer. *See, e.g.*, *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (habeas review

is specific to state court's reasoning). Wallace presented affirmative circumstantial evidence that neither the prosecutor nor judge would have been an impediment. For the prosecutor, it was a one-day offer, so subsequent trial testimony would not have led to a withdrawal. The trial judge approved similar plea deals for two other defendants, Kenisa Rush and Kimberly Gates. ROA.1132; 264 So. 3d at 5. And, at the post-conviction hearing on Wallace's ineffective assistance of counsel claim, neither the prosecutor nor the judge suggested the plea offer would not have gone through. *E.g.*, *Jones v. State*, 284 So. 3d 855, 860 (Miss. Ct. App. 2019) ("The trial judge's statement that he would have rejected the plea bargain offered by the State is fatal to Jones's claim that she was prejudiced by any deficiency in her attorneys' representation regarding the plea offer."). The error was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and Wallace is entitled to habeas relief.

## STATEMENT OF THE CASE

In November 2011, Reginald Wallace, the younger son of a single-mother, ROA.500, was a student at Jackson State University, ROA.735, with no prior record, ROA.500. That changed after he was indicted along-

side Antonio Wallace[3]—the Petitioner's older brother—Kenisa Rush, Demarcus Timmons, and Kimberly Gates for participating in a scheme to steal an apparel store's nightly deposit. ROA.735–36. Rush, who worked at the store, alerted the others that a co-manager was about to leave the store. *Id.* As the manager left with the nightly deposit, Timmons entered the manager's car, held a gun on her, and ordered her to drive to a hotel, where Timmons took the nightly deposit. *Id.* Wallace followed Timmons and the manager with another co-conspirator, Gates, in tow. *Id.* Timmons and the rest absconded with the deposit. *Id.*

In September 2012, Rush and Gates both took plea deals and pled to "simple robbery."[4] ROA.735. Rush, in her plea recital, explained she helped plan the scheme with Antonio Wallace and Timmons. ROA.505. Rush received a seven-year sentence. ROA.1132; 264 So. 3d at 5. Gates

---

[3] To distinguish between the Petitioner and his brother, this brief will refer to Antonio Wallace by his full name.

[4] "In Mississippi, there is no offense titled 'simple robbery.'" 264 So. 3d 1, 3 n.1. Throughout the proceedings, it has been understood that the plea offer was robbery as set forth in Mississippi Code Annotated section 97-3-73 (Rev. 2014). *Id.* The term "simple robbery" is a shorthand for that provision.

provided her car and, according to Rush, may have been driving it instead of or in addition to Wallace. ROA.505. Gates in her plea recital claimed Wallace drove Rush's car. ROA.511. Gates received a ten-year sentence. ROA.1132; 264 So. 3d at 5.

Wallace retained Ottawa Carter as counsel. The State offered Wallace a written plea offer for thirty years with ten suspended—essentially twenty-years of prison-time—on armed robbery and kidnapping, with no requirement for Wallace's cooperation (the "20-year" written plea offer). ROA.442. But Wallace learned "[o]ne of [his] codefendants was offered a simple robbery plea," so he asked Carter if could get the same plea. ROA.963. When Wallace asked "Carter if [he] could plead to simple robbery" Carter "told [Wallace] he would talk with the DA." ROA.964. And when Wallace "kept checking with him, [Carter] kept saying he never got the chance to." ROA.964.

Wallace ultimately accepted an "open plea" to armed robbery, kidnapping, and conspiracy on the advice Carter. ROA.960. The court sentenced him to thirty years in prison.

Wallace filed a motion for state post-conviction relief. ROA.961. In response, the State attached an affidavit from Carter. *Wallace v. State*,

264 So. 3d 1, 3 (Miss. Ct. App. 2018). "In that affidavit, Carter stated that Wallace turned down an offer from the prosecutor for Wallace to plead guilty to the lesser charge of simple robbery." *Id.* "Carter further stated that Wallace and Wallace's mother, Patricia Greer, refused to consider the offer." *Id.* This was a surprise to Wallace and Greer; they first learned of the offer to plead to the lesser robbery charge in the posttrial affidavit. *Id.* The simple robbery plea would have carried a maximum sentence of fifteen years. 264 So.3d at 3 and n. 1. The trial court denied the ineffective assistance of counsel claim.

Wallace appealed, and the Mississippi Court of Appeals reversed and remanded the case for an evidentiary hearing on whether Carter communicated the simple robbery plea to Wallace. *Wallace v. State*, 184 So. 3d 993, 1001–03 (Miss. Ct. App. 2016). That remand was strictly limited to "an evidentiary hearing on the issue as to whether Carter failed to communicate an offer to plead guilty to the lesser offense of robbery." *Id.* at 1003.

During the evidentiary hearing, Carter testified that he did not recall communicating the simple robbery plea offer to Wallace and that it was possible he did not do so. ROA.978. But Carter "remember[ed] Mr.

Buckley making a plea here in the court room. It was an oral." ROA.978. Carter testified that it "would have been a good deal" for Wallace. ROA.768. Carter remembered the deal only had one condition: "Mr. Buckley made the offer when we were here in the courtroom, and that he said it had to be done that day." ROA.968.

The trial court was surprised that Carter would not have communicated such a good deal, asking: "Are you telling me that in a case where your client was looking at an armed robbery and a kidnapping and looking at life in the penitentiary, and Mr. Buckley offered him simple robbery where he could do 15 years, that you didn't communicate it to him?" ROA.995. When asked to answer like his "life depended on it," Carter responded "Judge, like you said, I have been doing this for 25 years. I know that's what I should have done . . . But I don't have -- I don't have the recollection of that." ROA.995–96.

Wallace testified that the fifteen-year-max plea was never communicated to him and that if he had known of it, he would have accepted it. ROA.964. Wallace testified "[o]ne of his codefendants was offered a simple robbery plea, so [he] asked [his defense attorney] if [he] could get the same plea." ROA.963. When Wallace asked "Carter if [he] could plead to

simple robbery" Carter "told [Wallace] he would talk with the DA." ROA.964. And when Wallace "kept checking with him, [Carter] kept saying he never got the chance to." ROA.964.

After the post-conviction hearing, the trial court again denied Wallace relief. 264 So.3d at 3. On appeal, the Mississippi Court of Appeals held that "the sworn testimony elicited at the evidentiary hearing does not support the trial court's finding that Wallace's attorney effectively communicated the plea offer to Wallace." 264 So.3d at 4. "Carter's affidavit is the only record evidence upon which to base a finding that Wallace's counsel communicated the opportunity for Wallace to plead guilty to the lesser charge of robbery." *Id.* But that evidence was "essentially recanted by Carter in Carter's own sworn testimony taken during the hearing[.]"[5] *Id.*

The Mississippi Court still affirmed the denial of relief. The reason, according to the Court, was that "Wallace failed to demonstrate that he would have accepted the complete terms of any plea agreement, which

[5] The strength of the affidavit was undermined when Carter said he could not remember if he "prepared it." ROA.982. When asked if he "recall[ed] making edits on it and signing it," Carter responded, "I think so." ROA.983.

included implicating his brother and cooperating with the State." *Id.* at 5. Despite Carter not testifying to any conditions, except "that it had to be done that day," ROA.978, and the fact that the thirty-year-ten-suspended written plea offer had no cooperation conditions, ROA.442, the Court read-in a cooperation condition. The source? Rush and Gates, as "codefendants cooperated with the State and testified against Antonio [Wallace]. *Obviously* the same would have been required from Wallace." 264 So. 3d at 5 (emphasis added). There is no evidence in the record, however, that Rush cooperated as part of her plea deal. Judge Barnes, joined by two others, dissented, stating that there is "nothing in the record to support that [cooperation] conclusion." *Id.* at 8.

The Mississippi Supreme Court denied the Writ of Certiorari with no reasoning, with three justices voting to grant. ROA.1163. Wallace filed his § 2254 petition. ROA.1. The district court dismissed it as untimely. ROA.119. This Court reversed and remanded for a merits determination. *Wallace v. State of Mississippi,* 43 F.4th 482 (5th Cir. 2022). Almost three years later, on July 14, 2025, a U.S. magistrate judge issued an R&R recommending denial. ROA.328. Wallace objected. ROA.330. The District

Court adopted the R&R and issued a certificate of appealability. ROA.380. Wallace appealed. ROA.383.

## SUMMARY OF THE ARGUMENT

First, Wallace explains why this Court should clarify the certificate of appealability to adhere to the text of Section 2253(c), even though its jurisdiction is secure because a COA in fact issued. Section 2253(c) requires that for a COA to issue, there must be "a substantial showing of a denial of a constitutional right." § 2253(c)(2). Here, the three questions in the district court's COA do not explicitly reference a constitutional right but are three subsidiary questions of the whether the Mississippi State Court's decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); *see also Strickland*, 466 U.S. at 694; *Frye*, 566 U.S. at 148; *Lafler*, 566 U.S. at 168. While Wallace understands that the COA invites an analysis of the prejudice question, Wallace raises the issue out of an abundance of caution.

Second, Wallace explains why the Mississippi State Court's decision is "based on an unreasonable determination of the facts," § 2254(d)(2). Wallace provided direct evidence that he would have taken

the plea by not only testifying that he would have taken it but also explaining that he had been pressing his lawyer for such a plea because a codefendant had received one. ROA.963–64.

The Mississippi Court read-in facts to rebut that unequivocal testimony—inserting a cooperation requirement into the offer. 264 So.3d at 4. To be clear, neither the prosecutor nor anyone else at the hearing—which was only about *Strickland* performance—said anything about this condition. The Mississippi Court just used a classic legal red flag—the word "obviously"—as a substitute for evidence. 264 So.3d at 4. The record does not support the finding. When a state court claims something is in the record, and it is not there, then both §§ 2254(d)(2) and (e)(1) are met. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

Third, the last hurdle to relief is harmless error under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Mississippi Court's error on part one of the *Strickland* prejudice as applied through *Frye* and *Lafler*, would be harmless if the prosecutor would have withdrawn his one-day offer before Wallace could have accepted it, or if the trial court would have rejected it. Because the Mississippi Court's last reasoned decision did not address these elements, this Court's review is de novo. *See, e.g.*,

*Wilson v. Sellers*, 584 U.S. 122, 125 (2018). Wallace presented affirmative circumstantial evidence that neither the prosecutor nor judge would have been an impediment. For the prosecutor, it was a one-day offer, so it is unlikely that it would have been withdrawn. For the court, it accepted the same plea deal for Rush and Gates. ROA.1132; 264 So. 3d at 5. How codefendants are treated is good evidence of prejudice—good enough for *de novo* review. *United States v. Scribner*, 832 F.3d 252, 256 (5th Cir. 2016) (per curiam); *Flores-Rivera v. United States*, 16 F.4th 963, 969 (1st Cir. 2021); *Mayo v. Henderson*, 13 F.3d 528, 536 (2d Cir. 1994).

## ARGUMENT

### I. Habeas Standards of Review

This case presents several interacting and changing standards of review. This Court will review some issues under deferential AEDPA standards of review and others de novo. *See, e.g.*, *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (splitting review into addressed and unaddressed issues). How these standards of review interact with each issue is explained further in the respective argument sections below, but the basics are laid out here.

Section 2241 gives a district court, circuit judges, and the Supreme Court power to grant a writ of habeas corpus. 28 U.S.C. § 2241. "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. Congress limited this power with the Antiterrorism and Effective Death Penalty Act. 110 Stat. 1214. That Act narrowed relief with procedural bars, *e.g.* 28 U.S.C. § 2244(d)(1), and deferential review for state court judgments in 28 U.S.C. § 2254. A federal habeas court reviews the state court's last reasoned decision and "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson*, 584 U.S. at 125.

Relevant here are 28 U.S.C. §§ 2254(d)(2) and (e)(1). Section 2254(d)(2) provides that an application for a writ of habeas corpus should be granted if the state court's adjudication of the claim . . . (2) resulted in a decision that was based on *an unreasonable determination of the facts* in light of the evidence presented in the State court proceeding." (emphasis added). Section§ 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" in a subsequent federal habeas proceeding and that the petitioner "shall have

the burden of rebutting the presumption of correctness by clear and convincing evidence." *See, e.g.*, *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (applying *Wood v. Allen*, 558 U.S. 290, 301 (2010)). The Supreme Court has "not defined the precise relationship between §2254(d)(2) and §2254(e)(1). *Burt v. Titlow,* 571 U.S. 12, 18 (2011).

Issues unaddressed by the Mississippi Court do not receive the same deference. Until recently, this Circuit's previous rule, laid out in *Neal v. Puckett*, 286 F.3d 230, 246 (2002) (en banc), was that federal courts review state court conclusions not reasons. That meant this Court applied § 2254(d) deference to elements unaddressed by the State Court. *See id.* But in *Wooten v. Lumpkin*, 113 F.4th 560, 567 (5th Cir. 2024), this Court recognized that *Wilson v. Sellers* was controlling. "Under *Wilson*, a federal habeas court must 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'" *Joubert v. Guerrero*, No. 24-70007, 2025 WL 2643182, at *9 (5th Cir. Sept. 15, 2025)) (quoting *Wilson*, 584 U.S., 125 and citing *Wooten*, 113 F.4th at 567). Any issue not considered by the Mississippi Court, therefore, receives *de novo* review. *E.g.*, *Gish v. Hepp*, 955 F.3d 597, 605 (7th Cir. 2020) ("Our review proceeds *de novo* (and not under the

deferential standard of § 2254(d)) because this dimension of Gish's claim is one the Wisconsin Court of Appeals never reached and considered.")

## II. This Court should amend the certificate of ability to include a question explicitly about "denial of a constitutional right."

Section 2253(c)(2) provides that a certificate of ability should only issue upon "a substantial showing of a denial of a constitutional right." *See* 28 U.S.C. § 2253(c). As explained below, Wallace has made a substantial showing that he has been denied his Sixth Amendment right to effective assistance of counsel. Three justices of the Mississippi Court of Appeals agree, 264.So.3d at 8, and three Justices of the Mississippi Supreme Court would have taken a closer look, ROA.1164. This shows the district court was right to issue a COA. *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) ("When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine."); *see also Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003) (For a COA, "the question is the debatability of the underlying constitutional claim, not the resolution of that debate.").

Wallace understands that the constitutional question of whether prejudice exists such that he was denied effective assistance of counsel is

implied and included within the COA granted by the district court. Nonetheless, out of an abundance of caution, he is filing a contemporaneous motion to expand the certificate of appealability to cover the prejudice question. Wallace does so because none of the three questions *explicitly* reference "a constitutional right." ROA.380. And this Court has strictly adhered to § 2253's text. *See, e.g.*, *Jones v. Stephens*, 541 F. App'x 399, 410 (5th Cir. 2013).

To be sure, this Court has appellate jurisdiction. The fact that the district court issued a COA secures this Court's appellate jurisdiction. This Court has "recognize[d] the Supreme Court has held that the only jurisdictional component of AEDPA's COA requirements is the one requiring the issuance of a COA before an appeal may be taken to the court of appeals[.]" *Jones*, 541 F. App'x at 410 (citing *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012) ("[T]he only 'clear' jurisdictional language in § 2253(c) appears in § 2253(c)(1).").

Unlike in *Jones*, there is not a "lack of any discussion of the merits of the [*Strickland*] claim in the district court's opinion[.]" 541 F. App'x at 410. Rather, the Court issued a COA with three subsidiary questions of the larger question of whether Mississippi Court of Appeals's *Strickland*

prejudice decision that Wallace did not show a reasonable probability that he would accept the plea deal was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

If the Court has any concerns about the scope of the COA, Section 2253(c) permits a "circuit . . . judge [to] issue[] a certificate of appealability" upon a petitioner making "a substantial showing of the denial of a constitutional right." *See* § 2253(c). He has done so, and this Court can expand the COA.

## III. The Mississippi State Court made an unreasonable determination that Wallace would not have taken the plea deal offered to him in the face of his unequivocal statement that he would have taken the deal, which is only rebutted by speculation. (COA 1 and 2).

In Mississippi Court, Wallace needed only to show a "reasonable probability" that the outcome would have been different to satisfy *Strickland* prejudice. 466 U.S. at 694. In the plea context, that means showing that there's a reasonable probability he would have taken the deal for no-more-than-fifteen when he was facing life, and the prosecution and judge would not have gotten in the way. *Frye*, 566 U.S. at 148; *Lafler*, 566 U.S.

at 168. The Mississippi Court only addressed whether Wallace would have taken the deal. So Wallace starts there.

### A. Wallace showed a reasonable probability he would have taken the plea deal even without disturbing the Mississippi Court's factual findings.

The Mississippi State Court's decision is "based on an unreasonable determination of the facts," § 2254(d)(2). Specifically, it is unreasonable to find that Wallace would not have accepted the no-more-than-fifteen-year plea deal while facing life in prison. 264 So.3d at 5. The Mississippi Court and district court both seemingly lost sight of the "reasonably probability" standard and have required Wallace to conclusively prove he would have taken the deal. *See generally* 264 So.3d 1; ROA.328.

In any event, Wallace did his part carrying his burden. Wallace "would [] have taken it . . . A. Yes, ma'am." ROA.962. Beyond that unequivocal statement in the post-conviction proceeding, Wallace knew "[o]ne of his codefendants was offered a simple robbery plea, so [he] asked [his defense attorney] if [he] could get the same plea." ROA.963. When Wallace asked "Carter if [he] could plead to simple robbery" Carter "told [Wallace] he would talk with the DA." ROA.964. And when Wallace "kept checking with him, [Carter] kept saying he never go the chance to."

ROA.964. That's enough under § 2254(d)(2) to make the Mississippi Court's finding unreasonable.

The R&R's invocation of *Cisneros* and *Merzbacher* is misplaced. *See* ROA.320. In *United States v. Cisneros*, No. 22-40102, 2023 WL 8433978 (5th Cir. Dec. 5, 2023), the prosecutor stated "that he did not recall whether he extended a plea offer to Cisneros, but that he would not have offered a twenty-year plea bargain" because "to get a reduction to that level would have required him to debrief, cooperate, and testify against his family members." *Id.* at *3. That is the opposite of what happened here. Just as the prosecutor's statement in *Cisneros* that he would not have offered such a plea without testimony was important evidence there, the prosecutor's failure to make such a statement in this case was also important evidence. And in *Cisneros*, Cisneros went to trial. *Id.* at *2 (describing him as a "fighter" who would not have accepted a plea). Wallace ended up taking a much less favorable plea.

*Merzbacher* is similarly inapplicable. The Fourth Circuit held that the petitioner did not demonstrate that a state court acted unreasonably in finding that the petitioner would not have accepted a guilty plea offer

because he had been so vociferous in proclaiming his innocence throughout the case, had many civil suits pending against him, and did not want to admit to the child rape crimes with which he was charged in front of his wife. *Merzbacher v. Shearin,* 706 F. 3d 356, 366–69 (4th Cir. 2013).

Wallace was unequivocal that he would have taken the deal. He "would [] have taken it . . . A. Yes, ma'am." ROA.962. It was the deal that he had been asking Carter to get for him once he found out a codefendant secured a similar deal. *Id.* Wallace showed a reasonable probability that he would have accepted the plea offer. *Strickland*, 466 U.S. at 694; *Frye*, 566 U.S. at 148; *Lafler*, 566 U.S. at 168.

### B. The Mississippi Courts individual factual findings based on speculation are rebutted by clear and convincing evidence in the state court record.

To reject that showing, the Mississippi Court inserted a nonexistent condition into the plea deal—that Wallace would have to testify against his brother Antonio Wallace. This is despite the state court record showing the only condition was "that it had to be done that day," ROA.978, and the fact that the twenty-year written plea offer had no cooperation conditions, ROA.442. As the dissent put it, "nothing in the record [] support[s] this conclusion." 264 So. 3d at 8 (Barnes, J., dissenting).

The key claim of the Mississippi court was that Rush and Gates received plea deals and "those codefendants cooperated with the State and testified against Antonio [Wallace]. Obviously the same would have been required from Wallace." *Wallace v. State*, 264 So. 3d 1, 5 (Miss. Ct. App. 2018). The word "obviously" carries more weight than it can handle in this reasoning, it being a classic legal red flag for when there is no evidence to actually cite.[6]

To start, the only support the State has ever identified for a cooperation requirement goes only to Gates. *See* ROA.358 (citing Dkt. 6-1 at 48 (ROA.438) (general cooperation admonition to Gates during her plea colloquy); Dkt. 6-2 at 54 (ROA.595) (vague assertion that Rush "told on all of you" but no connection to any plea)). In any event, there is still clear and convincing evidence that the trial court was wrong that the plea required cooperation.

---

[6] Bryan Garner, *The Elements of Legal Style*, 129 (2d. ed. 2002) ("obviously; certainly; clearly; undeniably. It has become an ironic joke among lawyers that when an opponent—or for that matter, frequently, a judge—uses one of these words, the statement that follows is likely to be false, unreasonable, or fraught with doubt.").

On one hand, the trial court merely has the cooperation in Gates's plea. ROA.438. On the other hand, there is literally nothing in the record that cooperation was part of the fifteen-or-less-deal specific to Wallace. Buckley, the prosecutor, never said anything about a condition, in fact he disclaimed any "specific recollection" about the offer. ROA.988. And the prosecutor's office probably drafted Carter's initial affidavit—and it is questionable whether Carter even made changes in reviewing it. ROA.982–83. Yet the affidavit says nothing about the plea offer being conditioned on Wallace testifying against his brother.

And there is more than just an absence of evidence. Carter did not testify to any conditions on the plea existing, except "that it had to be done that day," ROA.973. That is, he affirmatively listed the conditions and did not mention cooperation. That makes sense when the twenty-year written plea offer had no cooperation condition. ROA.442. Each of these affirmatively negate the gap-filling speculation based on Gates's cooperation.

The district court's approval of the fact was simply wrong, even under the deferential review under §§ 2254(d)(1) and (e)(2), both on the law and the facts before it.

### 1. The opinion below got the law wrong.

First off, the district court—who adopted the R&R—got the law wrong. To begin, the district court apparently inserted 28 U.S.C. § 2254(d)(1)'s requirement that the law be clearly established "by the Supreme Court of the United States" into the §§ 2254(d)(2) and (e)(1) analysis. When Wallace cited a volume of case law of when §§ 2254(d)(2) and (e)(1) had been overcome when the state court gets the record flatly wrong, ROA.185, the R&R dismissed them because "[n]one of Petitioner's cited cases are United States Supreme Court cases. None address part one of *Frye*, or any part of *Frye*, or even plea-bargaining." ROA.317–18.

Wallace was not required to cite a Supreme Court case. And there is a Supreme Court case that shows the district court erred. In *Wiggins v. Smith*, "the [state] court based its conclusion, in part, on a clear factual error-that the 'social service records ... recorded incidences of ... sexual abuse.'" 539 U.S. 510, 528 (2003). But the Supreme Court looked at the state court records, and "the records contain no mention of sexual abuse, much less of the repeated molestations and rapes of petitioner detailed in the Selvog report." *Id.* That is, the Court took the state court's affirmative statement of what was in the record, then noted its absence. *See id.*

The Court then held "[t]he state court's assumption that the records documented instances of this abuse has been shown to be incorrect by 'clear and convincing evidence,' 28 U.S.C. § 2254(e)(1), and reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' § 2254(d)(2). This partial reliance on an erroneous factual finding further highlights the unreasonableness of the state court's decision." *Wiggins*, 539 U.S. at 528.

*Wiggins* should win this case for Wallace. Here Carter did not testify to any conditions on the plea existing, except "that it had to be done that day," ROA.978. That is, Carter affirmatively listed the conditions and did not mention any. The States's answer to that has been, apparently, the plea isn't written so there's license to read-in such a requirement. But, the twenty-year written plea offer to Wallace had no cooperation condition, suggesting no such condition was required. ROA.442.

Several circuit courts—including this Court—are unsurprisingly accord with *Wiggins*: when a state court finding is unsupported by the record, the finding has effectively been rebutted by clear and convincing evidence and resulting determination is unreasonable for purposes of federal habeas review. *See, e.g.*, *Simmons v. Epps,* 654 F.3d 526, 537 (5th

Cir. 2011) ("rank speculation . . . unsupported by the record" provides "clear and convincing evidence" that rebuts a state court's factual finding); *Smith v. Aldridge*, 904 F.3d 874, 882 (10th Cir. 2018) ("So if a state court cites the record incorrectly—by saying, for instance, that someone gave testimony at trial when they, in fact, did not—this could constitute an unreasonable factual determination."); *Smith v. Campbell*, 620 F. App'x. 734, 751 (11th Cir. 2015) (state court factual finding "is unsupported (and, in fact, contradicted) by the record and [is] therefore unreasonable"); *Austin v. Plumley*, 565 F. App'x. 175, 178, 183 (4th Cir. 2014) (noting "there is no support in the record for the State Supreme Court's finding" and concluding it is unreasonable); *Rolan v. Vaughn*, 445 F.3d 671, 681 (3d Cir. 2006) (where state court's finding "was not supported by the record," the finding "was unreasonable" and the petitioner "rebutted the conclusion of the [state court] by clear and convincing evidence"); *Miller v. Dormire*, 310 F.3d 600, 604 (8th Cir. 2002) (where "[t]he record is devoid of any direct testimony from [the petitioner] regarding his consent to waive trial by jury," the state court's finding that he did consent "is an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2)").

For the cases it did address, the district court botched distinguishing both Fifth Circuit cases, *Batchelor* and *Simmons*. Both show that §§ 2254(d) and (e)(1) can be overcome when the factual determination is based on no evidence in the record. The R&R just flatly claims this case is "materially different from *Batchelor* and *Simmons* and Petitioner's cited cases because plea bargaining occurs largely off the record[.]" ROA.319.

Starting with *Batchelor v. Cain*, 682 F.3d 400 (5th Cir. 2012), the absence of statements by the attorneys and state trial court was part of the clear and convincing evidence cited by the Fifth Circuit in holding that the state court's finding was unreasonable and habeas relief should be granted. "No one involved in Batchelor's trial court proceedings—neither the court, nor the prosecution, nor [defense counsel] Kelly, nor Batchelor himself—ever suggested that Batchelor's unwillingness to plead without conferring with counsel constituted a waiver of his Faretta request." *Id.* at 408–09. And after discussing certain aspects of the state court's reasoning, the Fifth Circuit pointed to the absence of any other basis for the state court's finding.

> The state advances no other factual basis for a finding that Batchelor abandoned or vacillated in his request, and our review of the record reveals none. Accordingly, we conclude that Batchelor has met his burden of rebutting by clear and convincing evidence the presumptive correctness afforded the state appellate court's implicit factual determination that Batchelor equivocated or abandoned his motion. *See* 28 U.S.C. § 2254(e)(1). We conclude that the state appellate court's adjudication of Batchelor's Faretta claim resulted in a decision based on an objectively unreasonable factual determination. *See id.* § 2254(d)(2).

*Id.* at 413.

For *Simmons*, this Court concluded that "[b]ecause the facts marshaled by the Mississippi Supreme Court were an unreasonable determination in light of the trial record, there was insufficient evidence to sustain the aggravating circumstance." *Simmons v. Epps*, 654 F.3d 526, 536 (5th Cir. 2011). In *Simmons* the fact under review was whether Simmons "knowingly created a great risk of death to many people." 654 F.3d at 536–37. That means the "rank speculation" by the Mississippi Supreme Court was about Simmons's state of mind, *see id.*—that state of mind is not "memorialized" in "state court records" ROA.318, anymore than the Carter's recitation of the plea deal in the post-conviction hearing, ROA.964.

Analogies to the federal clearly-erroneous standard support that a state court's speculation can be overturned on § 2254(e)(1). "Courts generally have equated section 2254(e)(1)'s concept of 'clear and convincing evidence' with the 'clearly erroneous' standard for appellate review of district court factfindings." 2 Federal Habeas Corpus Practice and Procedure § 30.2 (2025). In federal sentencing cases, this Court has found clear error based on speculation. This Court held a district court "did clearly err in refusing to grant a [sentence] reduction" based on defendant cooperation. . . "when district court's conclusion that that a defendant did not cooperate fully was 'pure speculation.'" *United States v. Lima-Rivero*, 971 F.3d 518, 520 (5th Cir. 2020) (quoting *United States v. Miller*, 179 F.3d 961, 968 (5th Cir. 1999)).

**2. The opinion below misreads the factual record before it.**

Besides getting the law wrong, the R&R also just misstates the briefing by claiming "Petitioner does not point to evidence in the state court record that contradicts the" Mississippi Court's cooperation finding. ROA.918. In fact, Wallace pointed out that Carter's post-conviction hearing testimony explained the conditions but did not mention Wallace testifying against his brother as one, and the prosecution's unwillingness to

perjure itself by saying that was a condition. ROA.275 (citing Dkt.6-7 at 28, 32, 36 (ROA.980, 984, 988); *see also* ROA.988 (prosecutor disclaiming "specific recollection" about the offer). The twenty-year written plea offer had no cooperation requirement, supporting the conclusion that the oral plea would not. ROA.442; *see also* ROA.274–75.

The State and the R&R both fall back on fact that prejudice was Wallace's burden to establish. *See, e.g.*, ROA.319; ROA.356. That's true enough. Setting aside until Part II.C, why there are procedural issues with the argument, substantively, it was Wallace's burden to show prejudice by a reasonable probability—that he would have taken the fifteen-year-or-less deal while facing life. As shown in *Wiggins*, Wallace can meet that burden by showing that the Mississippi Court relied on speculation, reading things into the record that do not exist. "The standard is demanding but not insatiable; . . . '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2002).

* * *

*Wiggins*, *Batchelor*, and *Simmons*, a surplus of other circuit cases, and analogous clearly erroneous cases all support that Wallace showed

clear and convincing evidence sufficient to overcome § 2254(e)(1)'s presumption of correctness that the Mississippi Court was wrong to speculate and insert a term in the plea unsupported and affirmatively dispelled by the state court record. *See* §§ 2254(d)(2), (e)(1).

### C. Procedure can weigh into the § 2254(d)(2) analysis, and the Mississippi Court ambushing Wallace with a new, made-up fact on appeal support Wallace's position.

The Tenth Circuit has explained that it "ha[s] little trouble concluding the procedures a state court employs to make factual determinations—here, deciding whether to order an evidentiary hearing—can affect the reasonableness of the court's subsequent factual determinations." *Smith v. Aldridge*, 904 F.3d 874, 882 (10th Cir. 2018) (Tymkovich, J.). So something like "declining to hold an evidentiary hearing may so affect, and indeed infect, a state court's fact-finding process that it renders the court's factual determinations unreasonable." *Id.* "This rule is unremarkable." *Id.* After all, "it is often difficult to completely differentiate procedure and substance because procedure often *affects* substance—that is, the procedural process through which a court makes a substantive determination influences the reasonableness of the substantive determination itself." *Id.*

No doubt, there was a hearing here. But that hearing was limited to a narrow factual question about *Strickland* performance: "we reverse the circuit court's judgment and remand the case for an evidentiary hearing on the issue as to whether Carter failed to communicate an offer to plead guilty to the lesser offense of robbery." *Wallace v. State*, 184 So.3d 993, 1003 (Miss. Ct. App. 2016); *see also* ROA.957. The remand did not include a prejudice determination.

Still Wallace testified that the fifteen-year-max plea was never communicated to him and that if he had known of it, he would have accepted it. ROA.964. Wallace testified "[o]ne of his codefendants was offered a simple robbery plea, so [he] asked [his defense attorney] if [he] could get the same plea." ROA.963. When Wallace asked "Carter if [he] could plead to simple robbery" Carter "told [Wallace] he would talk with the DA." ROA.964 And when Wallace "kept checking with him, [Carter] kept saying he never got the chance to." ROA.964.

The Mississippi Court then on appeal ambushed him with this new factual determination, unoffered by the prosecutor at the hearing that cooperation was a term. 264 So.3d at 4. Now, the State hides behind the idea that it was Wallace's burden to anticipate this ambush and negate

a claim that blocked his prejudice that was never made, despite the prosecutor being there, *e.g.*, ROA.988, and a very real possibility that the prosecution drafted Carter's affidavit, *see* ROA.982–83.

The State had every chance to ask Carter whether he remembered that was a condition. The prosecutor could have testified under oath that cooperation was a condition as it was for Gates. *But see* ROA.988 (prosecutor disclaiming "specific recollection" about the offer). Or the judge could have driven a nail in Wallace's claim's coffin—by saying he would not have approved the deal. *E.g.*, *Jones*, 284 So. 3d at 860 ("The trial judge's statement that he would have rejected the plea bargain offered by the State is fatal to Jones's claim that she was prejudiced by any deficiency in her attorneys' representation regarding the plea offer.").

But they didn't. Wallace made his showing of a reasonable probability, then the Court of Appeals inserted an unsupported fact into the analysis without the chance for Wallace to rebut it. That is an independent reason why the state court's determination of fact was unreasonable. *See* § 2254(d)(2).

* * *

The Mississippi Court speculated to find that Wallace had not carried his *Strickland* reasonable probability burden. Saying the deal "obviously" included a condition that Wallace would have to testify against his brother, and that he would not do so, was unsupported by the evidence in the state court record. That was error under many cases, but most clearly *Wiggins*. If that error was harmful under *Brecht*, this Court should reverse.

## IV. The Mississippi Court's § 2254(d)(2) unreasonable determination was not harmless under *Brecht*—the Mississippi Court's two unaddressed elements of *Frye* are met. (COA Issue 3)

Now that Wallace has shown that the Mississippi Court's determination was unreasonable under § 2254(d)(2), Wallace must show that the error was not harmless by showing *Strickland* prejudice to the remaining elements of *Frye*. *Brecht*, 507 U.S. at 637; *see also Wooten v. Lumpkin*, 113 F.4th 560, 567 (5th Cir. 2024). Here, the Mississippi Court's § 2254(d) error would be harmless, if it had "reache[d] the correct result, but provide[d] inadequate reasons[.]" *Wooten*, 113 F.4th at 567. In applying *Strickland*, *Frye*, and *Lafler*, that means Wallace showing a reasonable probability that "(2) "neither the prosecution nor [3] the trial court would

have prevented the offer from being accepted or implemented," *Frye*, 566 U.S. at 148; *see also Lafler*, 566 U.S. at 168.

Because these elements were unaddressed, they receive de novo review. *See, e.g.*, *Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Joubert v. Guerrero*, No. 24-70007, 2025 WL 2643182, at *9 (5th Cir. Sept. 15, 2025) ("Under *Wilson*, a federal habeas court must 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'") (quoting *Wilson*, 584 U.S., 125 and citing *Wooten*, 113 F.4th at 567 ); *see also Wooten*, 113 F.4th at 567 (declining to follow this Circuit's previous rule *Neal v. Puckett*, 286 F.3d 230, 246 (2002) (en banc) that federal courts review conclusions not reasons); *Gish v. Hepp*, 955 F.3d 597, 605 (7th Cir. 2020) ("Our review proceeds *de novo* (and not under the deferential standard of § 2254(d)) because this dimension of Gish's claim is one the Wisconsin Court of Appeals never reached and considered.").

Wallace did show the other *Frye* elements. Wallace presented affirmative circumstantial evidence that neither the prosecutor nor judge would have been an impediment. Circumstantial evidence *is* affirmative evidence. It is well established that circumstantial evidence can establish

facts—even under the proof beyond a reasonable doubt standard. *See, e.g.*, *United State v. Gil-Cruz*, 808 F.3d 274, 278 (5th Cir. 2015). And a "reasonable probability" is "less than a preponderance of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693–94). Here the circumstantial evidence can establish a reasonable probability.

For the prosecutor, it was a one-day offer, ROA.978, so it is already unlikely that it would have been withdrawn. Still, the other co-conspirators, Rush and Gates, managed to land the same deals around the same time for far less time of ten years and seven years respectively. ROA.1132; 264 So. 3d at 5. And the trial judge approved those deals. ROA.1132; 264 So. 3d at 5. When a judge confirms plea deals of co-defendants, that is strong evidence of a reasonable probability, sufficient for *de novo* review. *See, e.g.*, *United States v. Scribner*, 832 F.3d 252, 256 (5th Cir. 2016) (in describing facts: "Because Scribner's co-defendants had pleaded guilty to Count Three and the district court had accepted their pleas, the court found no dispute that the district court would have accepted a guilty plea from Scribner."); *cf. Flores-Rivera v. United States*,

16 F.4th 963, 969 (1st Cir. 2021) (looking to co-defendants' successful outcomes for counterfactuals for *Strickland* prejudice); *Mayo v. Henderson*, 13 F.3d 528, 536 (2d Cir. 1994) (given codefendant properly objected and got new trial, reasonable probability habeas petitioner would have obtained a new trial).

In rejecting this, the R&R relied on *Anaya v. Lumpkin*, 976 F.3d 545 (5th 2020), which is distinguishable. ROA.326–27. There, the Fifth Circuit held the petitioner had not shown a reasonable probability that the plea would be entered where the "record was silent" on whether the prosecutor would have rescinded the plea and whether the court would have accepted it. *Anaya*, 976 F.3d at 556. In *Anaya*, there had been no evidentiary hearing. Evidence about the plea offer in that case came from "self-serving affidavits" filed by the petitioner, *see Anaya v. Davis*, No. 2:15-CV-234-D, 2018 WL 4178259, at *9 (N.D. Tex. Aug. 3, 2018), report and recommendation adopted, No. 2:15-CV-234-D, 2018 WL 4145059 (N.D. Tex. Aug. 30, 2018). In contrast, the record here included not only an affidavit from Wallace's attorney Carter, which was probably drafted by the prosecution, ROA.982–83, but also an evidentiary hearing where the prosecutor never introduced the notion that he would have rescinded

the plea offer. *Anaya* also involved criminal charges against one individual—Anaya. *Anaya*, 976 F.3d at 548. Here, Petitioner was one of several codefendants involved in the same robbery. The fact that the court accepted the simple robbery pleas of two co-defendants is evidence that the court would have accepted the plea offer made to Petitioner. *See Scribner*, 832 F.3d at 256; *Flores-Rivera*, 16 F.4th at 969; *Mayo*, 13 F.3d at 536.

Wallace had affirmative evidence to avoid harmless error under *Brecht* by establishing the prosecutor and judge would not have been an impediment to Wallace taking the deal. *See Frye*, 566 U.S. at 148; *Lafler*, 566 U.S. at 168.

## CONCLUSION

The Court should reverse and order the district court to issue the writ of habeas corpus. *See Lafler*, 566 U.S. at 174; *see also Wallace*, 264 So. 3d at 8 (dissent explaining the appropriate relief: "Wallace should be allowed to withdraw his guilty plea, and the case should be remanded to the trial court's active docket for further proceedings.").

Respectfully submitted,

/s/ *Jennifer S. Freel*
Jennifer S. Freel
Texas Bar No. 24051327
Cody Lee Vaughn
Texas Bar No. 24115897
JACKSON WALKER LLP
100 Congress Ave., Suite 1100
Austin, Texas 78701
[Tel.] (512) 236-2000
[Fax] (512) 236-2002
jfreel@jw.com
cvaughn@jw.com

COUNSEL FOR PETITIONER-APPELLANT

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following:

Erin E. Rutherford
Special Assistant Attorney General
Jim Hood
Jerrolyn Owens
P.O. Box 220
Jackson, MS 39205
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205
(601) 359-3811
Email: erin.rutherford@ago.ms.gov

Bridgette N. Grant-State Gov
Mississippi Attorney General's Office
550 High Street
Jackson, MS 39201
(601) 359-3680
Email: bridgette.grant@ago.ms.gov

*Counsel for Appellees State of Mississippi; Burl Cain, Commissioner, Mississippi Department of Corrections*

/s/ *Jennifer S. Freel*
Jennifer S. Freel

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Fed. R. App. P. 32 because it has been prepared in a conventional typeface no smaller than 14-point for text and footnotes. This document also complies with the word-count limitations of Fed. R. App. P. 5 and 5th Cir. R. 5 because it contains 8,283 words.

/s/ *Jennifer S. Freel*
Jennifer S. Freel